SULLIVAN v. SUSONG.

1. A MOTION TO SET ASIDE A JUDGMENT, made to the court and in the case in which the judgment was rendered, is the approved practice.

2. IBID.—SERVICE ON ATTORNEY—FINDINGS OF FACT by the Circuit Judge on a motion to set aside a judgment in an equity cause, will not be disturbed unless without evidence to support, or manifestly against the weight of the testimony. The testimony in this case, shown by several acts of the defendants, support the finding below, that the acceptance of service of

summons by an attorney was authorized by defendants and acquiesced in by them.

3. AN ACCEPTANCE OF SERVICE BY AN AUTHORIZED ATTORNEY, endorsed on the summons, is sufficient to bind the defendants when signed by the attorney's name as "attorney for the defendants."

4. IBID.—ESTOPPEL.—Defendants should not be allowed to question the authority of an attorney to accept service for them, when he afterwards answered for them, and, with their approval and support, conducted the litigation for them through a period of five years.

5. IBID.—IBID.—ATTACHMENT.—And the attorney's authority to accept service for them being thus established, an attachment of their property within thirty days before such service cannot be vacated for insufficient service of summons.

6. PARTNERSHIP—JUDGMENT—DECEASED PARTNER.—Where a partnership is sued in equity, and its effects and the individual property of the partners (all of whom are non-residents) are attached, and judgment is entered against all of them after one of the partners has died, the judgment against the deceased partner should not be enforced until opportunity given to his administrator to show cause, if any he can, why the judgment should not be enforced against deceased, the lien of the attachment being meantime preserved, and the judgment against the partnership assets and the surviving partners remaining unaffected.

Before HUDSON, J., Aiken, October, 1892.

Motion by W. A. Susong and others in the case of Sullivan *v.* Susong. See 30 S. C., 305, and 36 *Id.*, 287.

*Messrs. Haynsworth & Parker*, for appellants.

*Messrs. Henderson Bros.*, contra.

November 28, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. An action was commenced by the plaintiff against the defendants, G. W. Susong, W. A. Susong, A. E. Susong, D. L. Boyd, and James H. Rumbough, as composing the firm of Susong & Co., on the 17th June, 1887, in the Court of Common Pleas for Aiken County, in this State. Service was made upon the defendants by an acceptance of their attorney at law, W. C. Benet, Esq., on the 1st day of July, 1887, in writing. The object of the action was to recover by the plaintiff of the firm of Susong & Co. the sum of $10,518.26,

for services rendered such firm, under a contract in writing, in the construction of the Atlantic, Greenville, and Western Railway. An answer was duly filed to such complaint on behalf of the defendants by their said attorney at law. Before the answer was filed, a writ in attachment had been issued to the Counties of Aiken, Edgefield, Abbeville, Laurens, and Greenville, in this State, under an affidavit that defendants were non-residents, but had property in this State, and before the attachments were released by the plaintiff, and as a condition precedent thereto, a bond in the penal sum of $21,050 was made and signed by each defendant, with Alexander Stuart and James T. Williams as sureties, wherein it was recited that the defendants before named constituted the firm of Susong & Co., and that each one of them was a non-resident in South Carolina, but that their sureties, Stuart and Williams, were residents in this State, to wit, in the city of Greenville, State of South Carolina, and each one of the parties before named was bound in the sum as aforesaid unto the plaintiff, who was a creditor *suing the said Susong & Co.* for the sum of $10,518.26, with interest and costs, and which plaintiff had attached the property of the said Susong & Co., besides the property of certain of the members of said firm in this State, conditioned to pay "the amount of the judgment that may be recovered against the said Susong & Co., defendants-debtors in the action brought by the said W. E. Sullivan against said Susong & Co.," in the Court of Common Pleas for Aiken County, for $10,518.26. This bond was dated the 27th July, A. D. 1887. A very stubbornly contested litigation was conducted, extending through a period of nearly five years, in which three appeals were carried to the Supreme Court of this State,[1] but ultimately the plaintiff recovered a judgment for $11,375.62 and costs, which was affirmed by the Supreme Court on the 9th day of May, 1892.

On September 24th, 1892, A. J. Moseley, as administrator of the estate of George W. Susong, deceased, served a notice upon the plaintiff, that he would move the Court of Common Pleas for Aiken County, at its term next ensuing after date of notice: 1st. For an order vacating the judgment in this case, "upon

[1] See 30 S. C., 305; 36 *Id.*, 287.

the ground that the said George W. Susong departed this life before the hearing and rendering of judgment herein, and no order was made allowing the action to proceed against his representative or successor in interest, nor was his death suggested upon the record. 2d. For an order vacating and discharging the attachment issued herein: (*a*) Upon the ground that said attachments are void, in that they were issued at or about the time of issuing the summons in this action and before service of the same, and said summons was not served personally upon this defendant, or, indeed, upon any of the persons named as defendants, within thirty days after issuing said attachments, and no publication thereof was commenced in said time. (*b*) Upon the ground that the attachments were irregular, in that the attachment bond given by the plaintiff was not proved or acknowledged as required by law, and, also, in other respects apparent upon said papers.

At the same time (24th September, 1892,) the defendants, W. A. Susong, A. E. Susong, and D. L. Boyd, served a notice upon the plaintiff, that at the time noticed by A. J. Moseley as administrator of the estate of G. W. Susong, they would move: 1. For an order vacating the judgment, as to them, upon the ground that the summons herein has never been served upon them, either personally or by publication, and that the court did not have jurisdiction to render said judgment; and upon the ground that G. W. Susong, the only defendant herein who submitted himself to the jurisdiction of the court, died before the hearing of this case, and judgment was rendered without the making of an order allowing the action to proceed against his representative or successor in interest. 2. To vacate the acceptance of service of the summons and complaint, and the answer filed herein, in so far as they purport to bind them, upon the ground that said acceptance and answer were unauthorized. 3. For an order vacating the attachments issued herein: (*a*), (*b*) Upon the same grounds set forth in the notice of A. J. Moseley as administrator. (*c*) Upon the ground that the said attachments were improvidently issued as to these defendants, in that they were not indebted to plaintiff in any amount.

The issues thus tendered came on to be heard before his

honor, Judge Hudson, upon quite an array of affidavits for
and against the said issues of fact, and on the 4th day of No-
vember, 1892, the Circuit Judge made and filed his decision as
follows:

"This matter was submitted to me in open court at Aiken
upon the call of the calendar, and argued before me by consent
of counsel at Walterborough. The defendants, W. A. Susong,
A. E. Susong, D. L. Boyd, and James H. Rumbough, gave
notice of a motion to vacate and set aside a judgment against
Susong & Co. in favor of this plaintiff in the aforesaid action
for $11,375.62, on the 14th July, 1890, by the clerk of the court
of Aiken County, in pursuance of a decree of Judge Fraser,
which has since been affirmed by the Supreme Court; also, a
motion to vacate the attachment which was issued at the com-
mencement of this action, as against the defendants as non-
residents, and levied on their property in this State. A. J.
Moseley, clerk of the court at Greenville, as administrator of
G. W. Susong (who, it seems, died before Judge Fraser's decree),
joins in said motion. At the hearing, the motions were with-
drawn as to the defendant, James H. Rumbough. The grounds
on which it is insisted that the judgment must be vacated are
that the defendants were non-residents, and were not served
personally or by publication, and that W. C. Benet, Esq., who
accepted service for them, was not authorized so to do. The
summons and attachment were issued on the 17th June, 1887.
The attachment was levied on property of the defendants in
several counties in this State. An order for publication of the
summons was granted on the 20th June, 1887. On July 1st,
1887, within thirty days from the issuance of the summons and
the granting of the attachment, W. C. Benet, Esq., a reputable
attorney at the bar, accepted due service of the summons for
all the defendants. If he were authorized so to do, then this
was equivalent to personal service on the defendants.

"One mode of proof of personal service as laid down in our
Code (section 158, subd. 4), is 'the written admission of the
defendants,' and written admission by a duly authorized attor-
ney is admission by the principal of said attorney. *Reed* v.
*Reed*, 19 S. C., 551. That Mr. Benet had the authority to do

what he did, is presumed; and as a matter of fact I find after a careful examination of all the testimony and the argument that he was fully authorized and empowered by each of the defendants to accept service of the summons in this action for them, which he did in due form within the thirty days from the issuance of the summons. Plaintiff's attorney applied to him, asking if he had authority and would accept service for said defendants; he said he would write to them for instructions, and afterwards, in pursuance of such instructions, he accepted service. Besides this, if this authorized acceptance and appearance needed ratification, there is abundant proof of such ratification by all the defendants. An answer was filed for them, a hot litigation ensued, promoted and counseled by them, which lasted five years, in various tribunals; in which some of them personally appeared, aiding their counsel, Mr. Benet, and of which all of them had knowledge. On the 27th July, 1887, a formal bond, prepared by Mr. Benet for the release of the attachment, was executed, as the preponderance of the testimony shows, by all the defendants, and the property attached in Greenville released, the benefit of which was reaped by the defendants. These matters and others in the case clearly amount to an estoppel against the defendants from questioning Mr. Benet's alleged want of authority to accept service for them, and he is estopped by its own act.

"Moseley, as administrator of George W. Susong, joins in the motion to vacate the judgment, on the further ground (and the other defendants claim the benefit of his motion) that his intestate died prior to the rendition of the judgment, and that such judgment should be vacated as to him, and for said reasons as to all, no person having been substituted on the record in his place. This position is not tenable. The action was against the defendants as partners. When G. W. Susong died, his other partners, as survivors of the firm, owned the partnership assets, subject to the claims of creditors and to the right of the administrators of a deceased partner to call them to an account. But no revival of the suit was necessary; it could proceed as against the concern. Besides this, the judgment is against the partnership; the defendants were joint

debtors, and no effort is now being made to enforce the judgment against the separate property of G. W. Susong. As to the contention that A. E. Susong and W. E. Susong were not members of the firm, that matter is settled against them by the testimony, and especially by their powers of attorney to G. W. Susong, which shows they were partners.

"The motions to vacate the judgments must be denied, as to all the defendants, and also as to Moseley, the administrator of G. W. Susong, and so must be the motions to vacate the attachment. Even if said motion could be entertained after the rendition of the judgment, still, as it appears by my aforesaid finding of fact, that when Mr. Benet, on the 1st of July, 1887, within thirty days from the issuance of the attachment, was fully authorized to perform said act, then it follows that such written acceptance, being so authorized, bound the defendants and each of them, and stands in lieu of personal service upon them, and is such personal service. All questions as to the formal execution of the attachment bond, and its acceptance by and acknowledgment before the clerk, was abandoned at the hearing. Wherefore, it is ordered, that the motions herein made to vacate the judgment and attachment herein, be, and the same are hereby, denied with costs."

From this decretal order of Judge Hudson, the appellants urge the following exceptions: 1. It is submitted that the Circuit Judge erred in holding, that each of the defendants, within thirty days from the issuance of the summons, authorized and empowered W. C. Benet, Esq., to accept service of the summons for them, and in not holding that none of them had given such authority. 2. He erred in holding that the acceptance of service by Mr. Benet was personal service upon the defendants, within the meaning of section 248 of the Code. 3. Because he erred in not holding, that the summons in this action had not been personally served upon the defendants, or publication commenced within thirty days after the issuance of the warrant of attachment, as required by law, and in not adjudging, therefore, that the said attachment was void. 4. He erred in holding, that the acceptance of service by Mr. Benet was ratified by all the defendants, and that they were estopped from disputing

that he originally had authority, it being submitted that there is no evidence to show that they ever knew that he had accepted service of the summons, and that they had done no act of ratification. 5. Because, though assuming that the acts of the defendants were a sufficient ratification of the acceptance by Mr. Benet to validate the judgment, yet it is submitted that these acts did not occur within thirty days after the issuance of the attachment, and, therefore, could not, and did not, operate to validate said attachment, and his honor erred in not so holding. 6. Because he erred in holding, that after the death of G. W. Susong, the action could proceed against the defendants, as though the said G. W. Susong were still living. 7. Because he erred in-not holding that said action could not proceed after the death of G. W. Susong until his death was suggested on the record, or his administrator substituted, or, after one year, on supplemental complaint. 8. Because he erred in not setting aside the said judgment, it appearing that the said Geo. W. Susong had died before rendition of the judgment, that his death had not been suggested on the record, that his administrator had not been made a party to the suit, and that no supplemental complaint had been filed. 9. Because he erred in holding that the judgment, as it now stands, is a judgment against the partnership only, and that no effort is now being made to enforce the judgment against the property of Geo. W. Susong, it being submitted that the judgment, as it now stands, not only affects the property of the partnership, but of each partner and of Geo. W. Susong, including his real estate in the city of Greenville, and should have been set aside, as to him and the other appellants.

The appellants have followed the practice recognized and enforced by this court in the cases of *Crocker* v. *Allen*, 34 S. C., 452, and *Gillam* v. *Arnold*, 35 *Id.*, 612. As the court said in the latter case: "When the relief sought consists in setting aside a judgment for some alleged defect in the proceedings by which it was recovered, it would seem to be eminently fit and proper that the question should be determined by the court, and in the case in which the judgment was recovered." It remains now for us to consider the grounds of ex-

ception to the order of the Circuit Judge, which denied them
the relief they sought.

It is claimed by the appellants in their first five exceptions
that there was error in holding that Mr. Benet, within the
thirty days immediately ensuing the issuance of the
summons, accepted service for the defendants of the
summons in the case at bar.   Wherever these exceptions
relate to questions of fact, this court has repeatedly decided
that such findings of the Circuit Judge will not be interfered
with, unless without any testimony to support them, or where
such findings are manifestly against the weight of the testimony.
We have examined the case with care, and find that there was
testimony to support this finding of fact by the judge.   To
begin with, there is in writing, endorsed upon the summons
itself, an admission by Mr. Benet that he accepts such service
of the summons and complaint for Susong & Co., defendants,
on the 1st of July, 1887.   Then on the 27th day of July, 1887,
we find that Mr. Benet prepared the bond in the attachment
proceedings for his clients, Susong & Co., to sign, and that each
one of them did sign such bond so prepared.   Then we find
upon an examination of the bond itself, a direct and palpable
admission by each member of this firm of Susong & Co. that
the action of plaintiff against them as defendants had been
begun in the court at Aiken for the exact sum sued for.   Then
we find in the affidavit of James H. Rumbough, one of that
firm of Susong & Co., "that whilst it is true that he did not
specifically *for himself* [italics ours] authorize W. C. Benet to
appear for him in said case of Sullivan *vs.* Susong & Co., yet
he knew that said Benet had appeared for the firm of Susong &
Co. in said case, and answered for them, and *said fact was well
known to all the firm* [italics ours].   *Said case was vigorously fought
by the firm, and it was known that Mr. Benet was acting for us*"
[italics ours].   Besides, two of the firm, George W. Susong and
David L. Boyd, attended the trial of the cause at its beginning,
upholding while there with might and main the hands of their
active and able attorney, Mr. Benet.   It is idle at this late day,
with these facts in testimony at the hearing before the Circuit
Judge on the motions made by appellants herein, to say there

was no testimony to support this finding of the Circuit Judge. Was such finding against the manifest weight of the testimony? We cannot so find, in view of the facts testified to.

But appellants say the form in which the acceptance was made by Mr Benet[1] is utterly unavailing, because, as they say, it should have been signed Susong & Co., or rather each individual member of such firm, per Mr. Benet, and in support of such proposition, they cite as authority *Pryor* v. *Coulter*, 1 Bail., 517; *Welch* v. *Parish*, 1 Hill, 155; *Fash* v. *Ross*, 2 *Id.*, 294; *Taylor* v. *McLean*, 1 McMull., 352; *Moore* v. *Cooper*, 1 Speer, 87; *Webster* v. *Brown*, 2 S. C., 431; *DeWalt* v. *Kinard*, 19 *Id.*; 292, and *Johnson* v. *Johnson*, 27 *Id.*, 316. We have examined these cases, and such examination shows that *Price* v. *Halden*, *supra*, *Welch* v. *Parish*, *supra*, *Webster* v. *Brown*, *supra*, *DeWalt* v. *Kinard*, *supra*, and *Johnson* v. *Johnson*, *supra*, were instances where deeds either of conveyance or by way of mortgage were in question, and in each of these, the court held that, in order to make the deed executed by an agent for a principal effectual as the principal's deed, it must be signed and sealed in *the name of the principal* by the agent. But the cases *Fash* v. *Ross*, *supra*, *Taylor* v. *McLean*, *supra*, and *Moore* v. *Cooper*, *supra*, being instances where the agent signed notes instead of the principal, have each been *overruled* by the Court of Errors of this State, in the case of *Robertson* v. *Pope*, 1 Rich., 501. In the case last cited, the court said: "But there is a wide distinction between the technical formal execution of a deed and the making of a parol contract. The one rests upon the technical artificial rule that it must appear from the deed that the sealing and delivery was in the name of the principal. In a parol contract, it is sufficient if it appear that it was intended to be made for the principal." Thus it appears that this position of appellants is unfounded.

The appellants in their argument very aptly distinguish between the power, in law, of an attorney under his general authority, and that derived by him under a special power, and

[1] This acceptance was endorsed upon the original summons, and was signed: "W. C. Benet, attorney for Susong & Co., defendants."—REPORTER.

very properly announce the rule to be that an attorney can only accept service, for parties, of a summons, the original process in a cause whereby jurisdiction of the person of a defendant is acquired by a court in a cause therein pending, under a special authority from such proposed defendant. All this is admitted by the Circuit Judge, and we understand him to hold, in the case at bar, that Mr. Benet was clothed by these defendants with this special power to accept service for them. It would, it seems to us, be a strange conclusion, in view of the testimony here, to allow these defendants, after an acceptance by their attorney of service of this original process, and putting in an answer with their knowledge and consent, and conducting a litigation for five years nearly, and then, after a decision against them is reached, that, upon their present showing, they should now be allowed to repudiate such agency by their attorney. This court has had occasion, more than once, recently to declare the law to be, that where non-residents appear and answer an action, they are forever afterwards precluded from a denial of the service of a summons. *Chafee* v. *Postal Telegraph Co.*, 35 S. C., 378; *Meinhard Bros.* v. *Youngblood*, 37 *Id.*, 235–6.

But it is suggested by appellants, that although this may be, yet that the time at which this ratification may be had, if beyond the thirty days in which, by a statute of this State, such a harsh remedy as an attachment may be obtained, is of prime importance. In other words, appellants insist that an attachment cannot be supported, if the summons is not served personally, or its equivalent, within thirty days after it is issued. This is true, but in the case at bar the summons was issued on the 17th June, 1887, and actually served, if Mr. Benet's acceptance is a service, on the 1st day of July, 1887, which was within the thirty days fixed by the statute as imperatively necessary in case of an attachment. This is no promise to accept that Mr. Benet has made. This is no request in writing to delay the service. On the contrary, it is an actual, hard, admitted fact of this attorney's acceptance in writing on the summons itself, within the period fixed by the statute. Did Mr. Benet have the power, under the law, to accept this ser-

vice? In the case of *Reed* v. *Reed,* 19 S. C., 551, the present Chief Justice stated: "The question, therefore, is narrowed down to the inquiry, whether the admission of service by the attorneys of defendant amounts to the same thing as a written admission of service by himself *in propria persona.* For while the Code does not, in terms, provide that the written admission of service by the defendant may be by one duly authorized so to do by the defendant, yet we suppose that, upon well settled principles, an admission so made would be binding upon the defendant." We are perfectly satisfied still with this enunciation of the law on this subject. It follows, therefore, that it was in the power of Mr. Benet, as the attorney for the defendants, Susong & Co., if he had special authority so to do, to accept legal service for these his clients. Having already determined that he was clothed by the defendants with such special authority, his acceptance of service of the summons was complete. This conclusion renders it unnecessary to add anything more on this point. These exceptions, therefore, are overruled.

The next three exceptions are more serious, and have caused us much reflection. While it is true that a partnership is an entity somewhat distinct from the entity of each member of it, yet, for some purposes and in some particulars, each member is a part, an essential part, of a firm. It is because of this character affixed by the law to partnerships, that business enterprises made up by several persons are made corporate bodies by the authority of the State. Here these five gentlemen, the three Susongs, D. L. Boyd, and James H. Rumbough, entered into a partnership, and this partnership entered into this contract with the plaintiff. The action at bar was properly begun by the service of a summons upon each partner. At one time they were all in court in this action. Up to this point, we have, hereinbefore, agreed with the plaintiff. But George W. Susong departed this life in 1888 or 1889, before any judgment had been rendered in the action. Could this action be continued thereafter without the presence of George W. Susong or his personal representative? There would be no difficulty if the judgment rendered against this firm only bound

the partnership assets, for we cannot see that the surviving partners, being already parties to the action, would not support such judgment against the firm. The mere absence of an entry upon the process suggesting the death of one partner would scarcely be regarded as a fatal vice in the judgment. That suggestion is proper in all such cases, and should have been entered on the record, but it is not incurable, for the court could order it done *nunc pro tunc.* The true difficulty consists in the dual character of a judgment against a firm; it binds—that is, a lien upon, on the one hand, the partnership property, and, on the other hand, is a lien upon the property of each individual partner.

At this point we may refer to the decision of the Court of Appeals in this State, *Kuhns* v. *Law,* 14 Rich., 27, where Judge Wardlaw, as the organ of the court, amongst other things, said: "At law, the firm and every partner in it is bound for a partnership debt. The liability is said to be joint and several, but the contract is joint only. Suits against partners severally could not be sustained. Each of them is the agent of the others, and the law makes no distinction between an execution against them as partners and one against them as joint contractors acting each for himself. (See cases cited, 11 Rich. Law, 730.) Either execution has a lien upon the goods of every one of them, and satisfaction of either execution may be executed from any one of them, leaving him to compel contribution from the others." This case just cited was one from a Law Court, as distinguished from a Court of Equity. The case, from its importance, was heard by the Court of Errors, and while no decision was announced by the Court of Errors, but the judgment was from the Court of Appeals, we are informed in the decision itself: "The Court of Errors attained no satisfactory conclusion respecting the rule which should prevail in equity in the distribution of separate effects between separate and partnership creditors; but the judges were nearly, if not entirely, unanimous in the opinion that at law the supposed preference given to a separate creditor should not be allowed to prevail against a prior lien acquired by a partnership creditor." The Court

of Appeals overruled *Roberts* v. *Roberts*, 8 Rich., 15, wherein a different rule had been recognized.

In the case at bar, it is quite true that no separate creditor raises any question as to the judgment now in question, but the administrator by law represents all the creditors, and we conceive it to be in the line of his duty to such creditors to intervene so that justice may be subserved and the principles of law upheld. Such administrator has been quite tardy in making his appearance in this action, and he has given no reason or excuse for this tardiness ; still he now complains, and we are not called upon to decide the effect of his slowness in putting in his appearance. While at law he is not a necessary party to a judgment against a firm of which his intestate was a party, if such judgment could be restricted to a lien on the partnership assets, still in equity, where it is hoped that an end may be reached in its judgment, which will include the liability of the partnership to its creditors as well as that of the individual members composing the firm, he would be a necessary party. To follow this view to its full logical result, and thereby upset this judgment, so that its finality as to the *four surviving members* of the firm of Susong & Co. should be destroyed, would be a very harsh conclusion. Courts are not children's play houses. A lawsuit is a solemn thing. It is pre-eminently a practical thing. When this, the court of last resort in this State, is called upon to declare the freedom of the survivors of a partnership from a judgment to which they were parties, simply because another who was a party has died since the suit began, it is asking too much. Such a step would be monstrous. The words of the dean of the New York University Law School, Austin Abbott, in a recent article entitled "Lawlessness and the reason of the law," where he says: "The time is ripe for a systematic effort to bring disputed questions and conflicts of legal authorities directly to the test afforded by the bearing of the law *on public welfare*," are pregnant with meaning.

In the light of our duty, we are inclined to adopt the course here that will hold these survivors, A. E. Susong, W. A. Susong, D. L. Boyd, and James H. Rumbough, bound by this

judgment and the attachment, and to remand the case to the Circuit Court, with directions that plaintiff, by a simple order of the court served upon A. J. Moseley, as administrator of the estate of George W. Susong, deceased, make him a party to this action, in which he shall be allowed to show, if he can, any reason why the judgment should not include the estate of George W. Susong, deceased, the lien of the attachment still being preserved; but this litigation between the plaintiff and such administrator not to affect in any manner the judgment already obtained against the said four survivors of Susong & Co., either as to its lien on the partnership assets or as to their personal liability thereunder, or as to the lien of the attached property.

The judgment of this court is, that the order appealed from be modified in accordance with the directions herein contained, but in all other respects, it is affirmed.